IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIVE FACE ON WEB, LLC          :     CIVIL ACTION
                               :
          v.                   :
                               :
HOWARD STERN PRODUCTIONS,       :
INC., et al.                   :     NO. 08-2579

MEMORANDUM AND ORDER

McLaughlin, J.                                    March 17, 2009

          Live Face on Web, LLC ("LFOW") alleges that the
defendants have infringed its copyright in a proprietary software
that allows a company to display a "live" salesperson or
spokesperson superimposed on the company's website.  According to
LFOW, Cameo HD, with the knowledge, assistance, and consent of
the individual defendants, Robert P. Perna, Frederick A.
Horowitz, Douglas Drossman, and Brian Sheil (collectively, "the
Cameo defendants"), misappropriated LFOW's software and offered
it to Howard Stern Productions, Inc. ("HSP") for use on HSP's
website.  HSP then displayed on its website video presentations
of Howard Stern Show cast members, which were allegedly powered
by LFOW's proprietary software, without purchasing or licensing
the software from LFOW.

          In addition to bringing various claims against the
Cameo defendants, LFOW has sued HSP for contributory copyright
infringement (Count II), vicarious copyright infringement (Count
IV), unjust enrichment (Count IX), and civil conspiracy (Count

XI).[1]  HSP has moved to dismiss these claims.  The Court will
grant HSP's motion with respect to LFOW's claims of contributory
copyright infringement, unjust enrichment, and civil conspiracy,
but will deny the motion with respect to LFOW vicarious copyright
infringement claim.

I.   Facts[2]

       In October 2007, LFOW registered the copyright for
software that allows companies to display a "walking" and
"talking" personal host who introduces a website to an online
visitor.  This spokesperson can be configured to explain a
company's products or services and to direct a visitor's
attention to a particular product or aspect of the website.  The
software is powered by a video streaming software that LFOW
licenses to businesses and individuals throughout the United

---

[1] LFOW has also sued Xstream Broadcasting Networks, which
LFOW believes to be a parent, subsidiary, affiliate and/or
division of Cameo HD, and Entertainment Services, which is also
alleged to be a division and/or affiliate of Cameo HD.  The
precise relationship between Cameo HD, the individual defendants,
Xstream Broadcasting, and Entertainment Services is not relevant
for this motion.

[2] In considering a motion to dismiss, the Court must accept
the allegations in the complaint as true and draw all reasonable
inferences in favor of the plaintiff.  See Phillips v. County of
Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  The plaintiff must,
however, include factual allegations sufficient to raise a right
to relief above the speculative level.  See Bell Atl. Corp. v.
Twombly, 127 S. Ct. 1955, 1965 (2007); Phillips, 515 F.3d at 234.

States.  According to the complaint, LFOW did not authorize the defendants to use the software.  Compl. ¶¶ 24, 27, 29, 59, 114.

HSP is a business entity owned by Howard Stern.  HSP develops and produces entertainment content distributed to paying customers through a Sirius Satellite Radio show ("the Howard Stern Show"), as well as "on-demand" television programming available to cable and satellite television subscribers ("Howard TV") and an interactive website ("the Howard Stern website").  According to LFOW, all of these media mutually reinforce one another:  the website promotes the Howard Stern Show and Howard TV; Howard Stern Show events are frequently uploaded to the Howard Stern website; subscribers to the Howard Stern Show are invited to the website, and in turn, subscribers to the website receive free access to the Sirius online media player, Howard Stern video clips, and additional features.  Id. ¶¶ 31-33.

At some point, HSP began displaying video presentations of Howard Stern Show cast members on the Howard Stern website.  These presentations were configured to appear within seconds after a visitor came upon the website, and were designed to draw and prolong the visitor's attention to the website and to other Howard Stern media promoted on the website.  According to the complaint, the presentations increased the amount of time users

would spend on the website when they visited.[3]  The presentations also enhanced visitors' online experience and reinforced and advanced the brand and image of the Howard Stern Show and HSP's products and services.[4]  LFOW also alleges that HSP derives substantial advertising revenue tied directly to the volume of traffic it attracts to the website.  Id. ¶¶ 34-36, 45, 89.

According to LFOW, the spokesperson video presentations on the Howard Stern website were the product of a collaborative effort between HSP and the Cameo defendants.  Specifically, Cameo HD, with the knowledge, assistance, and consent of the individual defendants, offered technology to HSP which had been knowingly misappropriated from LFOW.[5]  The complaint further alleges that

---

[3] At least three such presentations are alleged to have been uploaded to the Howard Stern website.  To view all of the presentations, a visitor would need to visit or reload the website three or more times.  Compl. ¶ 36.

[4] LFOW states that at least one website user was "so drawn" by the presentations powered by the LFOW software that he or she returned to the website over and over again just to see the various presentations.  As support, LFOW has attached to the complaint a printout of postings from an online forum where users discuss topics related to the Howard Stern Show.  One user provides a link for the website and says:  "Be sure to refresh the page to see the different ones."  Another post states:  "That dancin' booey kills me everytime!"  See Compl. ¶ 46, Ex. E.

[5] In support of its contention that Cameo HD knowingly misappropriated its software, LFOW offers printouts of the computer source code that powered both the HSP presentations and the LFOW software, as well as a comparison of the two codes.  According to LFOW, the two sets of code are identical in every respect, including with regard to various typographical and grammatical errors in the LFOW source code that also appear in the HSP presentation source code.  See Compl. ¶¶ 42-44, Exs. B-D.

HSP and the Cameo defendants jointly arranged to and did record video footage of Howard Stern Show personalities, digitized the footage, and caused the files to be uploaded to the Howard Stern website.  HSP also, through its duly authorized agents, embedded a hyperlink on the Howard Stern website allowing the presentations to be displayed each time the website was visited by a user.  As a result, every time a user visited the site, the website automatically executed or allowed an unauthorized copy of the software to be distributed or copied onto each visitor's personal computer.  According to LFOW, HSP had control over the technology allowing the presentations to be so displayed and copied.  Id. ¶¶ 35, 41, 47-49.

Upon discovering the presentations on the Howard Stern website, LFOW sent a cease and desist letter to HSP and Sirius, demanding that HSP immediately and permanently cease and desist from all copying, use, and distribution of the LFOW software and/or all variations thereof.  LFOW later learned that, in response to the letter, HSP disabled the hyperlink allowing users to access the presentations on the website.  Compl. ¶¶ 52-53.

II.  Analysis

LFOW has brought claims against HSP under both federal copyright law and Pennsylvania common law.  It alleges that HSP is liable as a contributory and vicarious copyright infringer for the Cameo defendants' unlawful misappropriation of the LFOW

software.  It further alleges that HSP has been unjustly enriched by the unauthorized use of its software, and that HSP is liable for engaging in a civil conspiracy with the other defendants. HSP argues that the copyright claims should be dismissed for failure to state a claim, and that the state law claims should be dismissed as preempted by the Copyright Act.  The Court will first discuss LFOW's copyright claims, and will then turn to LFOW's state law claims.

A.   Copyright Claims

Courts recognize two types of secondary or indirect liability for copyright infringement:  contributory infringement and vicarious infringement.  See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005).  LFOW has brought claims for secondary liability against HSP under both doctrines.

1.   Contributory Infringement

To state a claim of contributory copyright infringement, a plaintiff must allege:  (1) direct copyright infringement by a third party; (2) knowledge of the third-party infringement; and (3) a material contribution to the infringement.  Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 160 (3d Cir. 1984).  Here, HSP disputes only the second element of LFOW's claim.  It asserts that LFOW's complaint is "manifestly devoid of a single fact" to suggest that

HSP knew or should have known of the Cameo defendants' direct infringement, and that LFOW's allegations of knowledge are merely a formulaic recitation of the elements of a claim for contributory copyright infringement.  HSP Mot. 7-9.

Even accepting LFOW's allegations as true and drawing all reasonable inferences in favor of LFOW, the allegations of the complaint do not establish that HSP knew of the Cameo defendants' alleged third-party infringement.  If anything, the complaint only establishes that HSP created the presentations in a "collaborative effort" with the Cameo defendants, and that HSP "controlled the technology" that permitted the video presentations to appear on the Howard Stern website.  Compl. ¶¶ 37, 48.  These allegations do not suffice, however, to show that HSP <u>knew</u> the Cameo defendants were engaged in unlawful copyright infringement.[6]

Because LFOW has not alleged facts to establish knowledge on the part of HSP, the Court will grant HSP's motion to dismiss LFOW's contributory infringement claim.  However, if LFOW believes that it has further evidence of HSP's knowledge and wishes to amend its complaint with respect to this claim, it may do so within thirty days of this Memorandum and Order.

---

[6] LFOW's allegations that Cameo HD knowingly misappropriated its software because the computer source codes are identical also do not establish what <u>HSP</u> knew.

    2.  <u>Vicarious Infringement</u>

To state a claim of vicarious copyright infringement, a plaintiff must allege (1) direct copyright infringement by a third party; (2) an obvious and direct financial interest in the exploitation of the copyrighted materials; and (3) the right and ability to supervise the infringing activity. <u>See</u> <u>Ellison v. Robertson</u>, 357 F.3d 1072, 1078 (9th Cir. 2004); 3 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u>, § 12.04[A][2] (2008) (quoting <u>Shapiro, Bernstein & Co. v. H.L. Green Co.</u>, 316 F.2d 304, 307 (2d Cir. 1963)).

At this stage, HSP only contests the existence of the "direct financial interest" element. HSP argues that LFOW has not stated direct financial interest because (1) LFOW has not alleged that visitors were drawn to HSP's website because of the ability to infringe by visiting the website; and (2) even if LFOW was not required to make such a showing, an allegation merely linking advertising revenue to the number of website users is insufficient to satisfy the direct financial interest element.

With respect to HSP's first point, the Court does not read the law of vicarious infringement as stringently as HSP does. For example, the Court does not read the Ninth Circuit's decision in <u>Ellison v. Robertson</u> as requiring a plaintiff to allege that users were drawn to a website specifically because of the ability to infringe. Rather, the Court reads <u>Ellison</u>, and

8

the case law on vicarious infringement, as stating only that a plaintiff may establish direct financial interest by making such a showing.  At least two other courts have treated the fact that potential customers were drawn to the ability to infringe as merely one way of showing direct financial interest.  See, e.g., Arista Records, Inc. v. Flea World, No. 03-2670, 2006 WL 842883, at *12 (D.N.J. Mar. 31, 2006); In re Aimster Copyright Litig., 252 F. Supp. 2d 634, 655 (N.D. Ill. 2002).

As for HSP's second point, HSP's characterization of the complaint is inaccurate.  The complaint not only states a link between the number of visitors and HSP's advertising revenues.  It states that each of HSP's media products, including the website, mutually reinforce one another.  Compl. ¶¶ 31-33. It states that the unauthorized presentations on the HSP website were designed to and did draw and prolong visitors' attention to the website and to other Howard Stern media promoted on the website; that the presentations increased the amount of time users would spend on the website; and that the presentations enhanced visitors' online experience, thus reinforcing and advancing the brand and image of the Howard Stern Show and HSP's products and services.  Id. ¶¶ 31-36, 45, 89.

The complaint also alleges that the video spokesperson presentations directed visitors to particular products or other aspects of the Howard Stern website, and that the software

features a "click on me" functionality that directs a user to a predetermined web page that promotes HSP's goods or services or reinforces the image and brand of the company.  Id. ¶¶ 24-25.

That these allegations are sufficient at this stage is reinforced by Nimmer's view of the direct financial interest element.  According to Nimmer, courts "seem to have relaxed" the standard over time, and "[i]t seems scarcely an exaggeration to posit that 'an obvious and direct financial interest' is now understood to encompass a possible, indirect benefit.'"  Nimmer on Copyright, § 12.04[A][2]; see also A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1023 (9th Cir. 2001) (finding direct financial interest where defendant's "future revenue" depended on increases in userbase); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 263 (9th Cir. 1996) (finding direct financial interest from admission fees, concession stand sales, and parking fees at the flea market at which the infringing material was available); Shapiro, Bernstein, 316 F.2d at 307 (explaining the line of cases in which infringing activities provide a proprietor with "a source of customers and enhanced income"); Aimster, 252 F. Supp. 2d at 655 (finding direct financial interest where every website user had to pay a registration fee, and where the company solicited contributions to the Aimster litigation and also sold posters, jeans, and other Aimster-related merchandise on its website, thus benefiting the

defendant's overall "commercial enterprise"); see also Ellison, 357 F.3d at 1079 (stating that the "essential aspect" of the direct financial interest inquiry is whether there is a causal relationship between the infringing activity and "any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits" (emphasis added)).

The combined weight of these authorities reinforces the Court's conclusion that, at this stage, LFOW has sufficiently stated a direct financial interest in the exploitation of LFOW's copyrighted material on HSP's part.  The Court will therefore deny HSP's motion to dismiss LFOW's vicarious infringement claim.

B.   State Law Claims

HSP argues that LFOW's state law claims for unjust enrichment and civil conspiracy are preempted by section 301 of the Copyright Act.  That section expressly preempts any state law claims that (1) fall within the subject matter of copyright and (2) create rights that are the equivalent of any of the exclusive rights created by copyright law.  17 U.S.C. § 301(a);[7] see also Orson, Inc. v. Miramax Film Corp., 189 F.3d 377, 382 (3d Cir.

_____

[7] Under Section 301, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright . . . are governed exclusively by this title," and "no person is entitled to any such right or equivalent right . . . under the common law or statutes of any State."

1999); Curtin v. Star Editorial Inc., 2 F. Supp. 2d 670, 674-75 (E.D. Pa. 1998).[8]

In determining whether a state law claim is functionally equivalent to or qualitatively different from a right protected by the Copyright Act, the Court of Appeals for the Third Circuit has applied an "extra element" test:  if a state cause of action requires proof of an extra element "beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action."  Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc. 307 F.3d 197, 217-18 (3d Cir. 2002); see also Tegg Corp. v. Beckstrom Elec. Co., No. 08-435, 2008 WL 5101358, at *7 (W.D. Pa. Nov. 26, 2008).

1. Unjust Enrichment

HSP argues, and the Court agrees, that to the extent that LFOW merely seeks reimbursement for use of its copyrighted work under a theory of unjust enrichment, that claim is preempted

_____

[8] Neither party disputes that the LFOW software falls within the subject matter of copyright.  See also Tegg Corp. v. Beckstrom Elec. Co., No. 08-435, 2008 WL 5101358, at *7 (W.D. Pa. Nov. 26, 2008) ("It is well-settled that computer source codes may be protected by copyright."). Accordingly, the Court need only address whether LFOW's state law claims allege rights that are equivalent to the exclusive rights created by copyright law.

under the Copyright Act and must be dismissed.  See Curtin, 2 F.
Supp. 2d at 675 (finding the plaintiff's unjust enrichment claim
preempted because "plaintiff asserts an exclusive right to and
reimbursement for the use of his compilation of photographs");
Nimmer on Copyright, § 1.01[B][1][g].

    LFOW does not contest HSP's argument regarding the
application of § 301's two-part preemption test to the facts of
this case.  Instead, LFOW argues that § 301 does not bar
alternative pleadings under Federal Rule 8(d)(2).  Although LFOW
concedes that HSP cannot be charged with liability both under the
Copyright Act and "any otherwise preempted state causes of
action," it argues that the Federal Rules do not prohibit LFOW
from pleading its state law claims in the alternative.[9]  LFOW
cites Ulloa v. Universal Music & Video Distrib. Corp., No. 01-
9583, 2004 WL 840279 (S.D.N.Y. Apr. 19, 2004), and Curtin v. Star
Editorial in support of its alternative pleading theory.
However, neither of these cases aids LFOW's case.

_____

    [9]  As HSP points out, other federal courts have rejected
this assertion.  See Atrium Group de Ediciones y Publicaciones,
S.L., v. Harry N. Abrams, Inc., 565 F. Supp. 2d 505, 510
(S.D.N.Y. 2008) ("Rule 8(d)(2) of the Federal Rules of Civil
Procedure does not purport to override § 301 preemption."); see
also Moser Pilon Nelson Architects, LLC v. HNTB Corp., No. 05-
422, 2006 WL 2331013, at *11 (D. Conn. Aug. 8, 2006) ("The
relevant question is whether Plaintiffs could bring their claims
under the copyright law at all, not whether they will, nor even
whether they will ultimately prevail on their copyright claim."
(emphasis in original)).

In Ulloa, a singer brought claims for copyright infringement and unjust enrichment, alleging that she had recorded a vocal phrase that the defendant used in the final version of one of its songs, without compensating her for the phrase's use.  The court, recognizing that a plaintiff may plead theories in the "factual alternative," found that even if the plaintiff did not have a copyright interest in her work, she might be able to persuade the jury that she had performed unpaid labor at the behest of the defendant.  Ulloa, 2004 WL 840279, at *2-3.  The Court acknowledged, however, that the plaintiff could not bring an unjust enrichment claim that was "identical" to her copyright infringement claim.  Id. at *3; see also Atrium Group de Ediciones y Publicaciones, S.L., v. Harry N. Abrams, Inc., 565 F. Supp. 2d 505, 510 (S.D.N.Y. 2008).

In Curtin, the plaintiff brought copyright and unjust enrichment claims for a magazine's publication of seven photographs the plaintiff had compiled in his book.  The Court dismissed the plaintiff's unjust enrichment claim with regard to six of the photographs, stating that "to the extent that plaintiff asserts an exclusive right to and reimbursement for the use of his compilation of photographs, his claim for unjust enrichment is preempted."  Curtin, 2 F. Supp. 2d at 675. Although the court allowed the unjust enrichment claim to proceed with respect to one photograph, it was only as an alternative to

14

the plaintiff's claim that the photograph was published in breach of the parties' written agreement.  See id. at 672, 674.

Count IX of LFOW's complaint states that "Defendants were conferred benefits that rightfully belonged to Plaintiff and which were misappropriated from Plaintiff without authorization from the owners thereof" and that "Defendants have received or will receive unjust enrichment from its [sic] misappropriation of content and its [sic] unauthorized use of the LFOW Software."  Compl. ¶¶ 113-14.  Misappropriation and unauthorized use of the LFOW software, however, are also the bases for LFOW's copyright claims.  See id. ¶¶ 69, 87.

To the extent that LFOW seeks reimbursement for any "enrichment" received by HSP from the unauthorized use of the LFOW software, it has not alleged any extra element beyond copying and preparing a work derivative of LFOW's software that would qualitatively distinguish its unjust enrichment claim from its copyright claims.  See Dun & Bradstreet, 307 F.3d at 217-18.  Nor does its unjust enrichment claim serve as an alternative factual theory to its copyright claims, as in Ulloa or Curtin.  Rather, as HSP points out, LFOW has alleged a single factual theory - the unauthorized use of its proprietary source code.

The rights asserted in LFOW's unjust enrichment claim against HSP, in the circumstances of this case, are equivalent to those protected by federal copyright law.  LFOW's unjust

15

enrichment claim against HSP is therefore preempted by federal copyright law and will be dismissed.

### 2.   Civil Conspiracy

HSP argues that LFOW's civil conspiracy claim against it is also preempted by the Copyright Act.[10]  Although HSP admits that the precise elements of a civil conspiracy claim differ from those of a claim for copyright infringement, it argues that LFOW's civil conspiracy claim is not qualitatively different from its claim of contributory copyright infringement.[11]  See Dun & Bradstreet, 307 F.3d at 218 ("Not every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law.").[12]

Under Pennsylvania law, a civil conspiracy claim requires proof of (1) a combination of two or more persons acting

_____

[10] HSP argues that LFOW's civil conspiracy claim should also be dismissed for failure to state a claim because LFOW has not stated an underlying claim and has also failed to plead malice. Because LFOW's civil conspiracy claim is preempted by the Copyright Act, the Court need not address these other arguments.

[11] Although the Court of Appeals for the Third Circuit has not ruled on this precise issue, various federal courts applying the extra element test have found state law claims for civil conspiracy preempted by the Copyright Act.  See Tegg, 2008 WL 5101358, at *9 (collecting cases).  LFOW has not provided, and the Court has not found, any case law to the contrary.

[12] Again, LFOW does not address the application of § 301's two-part preemption test to the facts of this case.  Its only counterargument against HSP's claim of preemption is that LFOW is permitted to bring claims in the alternative.  LFOW Opp. 23-25. The Court has already addressed this argument.

with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). Although conspiracy requires proof of intent and an agreement, it is the damage, and not the agreement itself, that is the gravamen of a civil conspiracy suit, and which permits recovery.[13] Cohen v. Pelagatti, 528 A.2d 657, 658 (Pa. Super. Ct. 1987).

The general rule in Pennsylvania is that conspirators are jointly and severally liable for the damages resulting from a conspiracy. Loughman v. Consol-Pa. Coal Co., 6 F.3d 88, 100 (3d Cir. 1993). The Court of Appeals for the Third Circuit has also recognized that contributory copyright infringement extends joint and several liability to those who participate in copyright infringement. See Columbia Pictures Indus., 749 F.2d at 160. Under this theory of liability, an individual is liable as a contributory infringer where she, "with knowledge of the

---

[13] The court in Tegg, analyzing whether the plaintiff's civil conspiracy claim was preempted under § 301, performed a thorough analysis of the agreement and intent elements of conspiracy, concluding that neither qualitatively distinguishes a civil conspiracy claim from a contributory infringement claim. Although LFOW has not argued that these elements serve to distinguish the civil conspiracy claim, this Court nonetheless finds persuasive the Tegg court's reasoning with respect to those elements. See Tegg, 2008 WL 5101358, at *10-12.

infringing activity, induces, causes, or materially contributes to the infringing activity of another."  Id.

Count XI of LFOW's complaint alleges that "Defendants combined with each other for an unlawful purpose with the intent of causing the harm complained of herein," and that "[b]y reason of the aforesaid unlawful conspiracy, Plaintiff has been harmed as heretofore alleged."  Compl. ¶¶ 125-26.  HSP argues that this claim is preempted by the Copyright Act because it lacks any allegations which are unique or different from LFOW's contributory copyright infringement claim, and because the harm averred in each claim is identical.  HSP Mot. 17.

LFOW's conspiracy claim is preempted by its contributory infringement claim.  Both claims are designed to extend joint and several liability for the illegal activity - here, the alleged infringement.  LFOW's civil conspiracy claim does not allege any extra element not already covered by its contributory copyright infringement claim against HSP - in which LFOW claimed that HSP willfully, intentionally, and purposefully enabled, facilitated, and materially contributed to the Cameo defendants' infringement of LFOW's copyright.  Compl. ¶¶ 70-73. LFOW does not seek to enforce, through its conspiracy claim, any rights other than those protected by the Copyright Act.[14]

---

[14] LFOW does not allege, for example, that the defendants conspired to commit some other tort or wrong aside from copyright infringement.  See Cooper v. Sony Music Entm't Inc., No. 01-0941,

LFOW essentially avers that the defendants formed a conspiracy to commit "the harm complained of herein" - namely, copyright infringement.  LFOW's civil conspiracy claim is not qualitatively different from its contributory copyright infringement claim.  The right sought to be vindicated by the claim is therefore equivalent to a right already created by copyright law and the claim is preempted.

An appropriate Order follows.

---

2002 WL 391693, at *5 (S.D. Tex. Feb. 22, 2002) (allowing the plaintiffs' conspiracy claim to continue to the extent that it alleged conspiracy to commit common law fraud).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIVE FACE ON WEB, LLC          :     CIVIL ACTION
                               :
          v.                   :
                               :
HOWARD STERN PRODUCTIONS,       :
INC., et al.                   :     NO. 08-2579

ORDER

AND NOW, this 17th day of March, 2009, upon consideration of the Motion to Dismiss Plaintiff's Complaint (Docket No. 7) filed by Howard Stern Productions, Inc. ("HSP"), the plaintiff's opposition, and HSP's reply thereto, and for the reasons stated in the accompanying memorandum of law, IT IS HEREBY ORDERED that HSP's motion is GRANTED in part and DENIED in part, as follows:

1.    HSP's motion to dismiss is DENIED with respect to the plaintiff's claim of vicarious copyright infringement (Count IV).

2.    HSP's motion is GRANTED with respect to LFOW's claims against HSP for contributory copyright infringement (Count II), unjust enrichment (Count IX), and civil conspiracy (Count XI).

3.    If LFOW wishes to amend its complaint with respect to its claim of vicarious copyright infringement

against HSP, it may do so within thirty days of
this Order.

BY THE COURT:

/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.